No. 84–6982.  BURR v. FLORIDA.  Sup. Ct. Fla.  Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

This petition presents the question whether the sentencing jury in a capital case may be prohibited from taking into account its own nagging doubts about the defendant's guilt as it considers whether the defendant deserves to die.  The Supreme Court of Florida has squarely resolved that question in the affirmative, despite the clear message of *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), that a capital defendant is entitled to have the jury consider "any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  *Lockett, supra,* at 604.

Even if I accepted the prevailing view that the death penalty can constitutionally be imposed under certain conditions, I would grant certiorari in this case to consider the grave constitutional question it presents.  Today's decision lets stand a ruling that clearly "creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett; supra,* at 605 (opinion of BURGER, C. J.), quoted in *Eddings, supra,* at 118 (O'CONNOR, J., concurring).

I

Petitioner, Charlie Burr, was charged with the murder of a convenience-store clerk during a robbery of the store.  At trial, the State's key witness was Burr's girlfriend, Domita Williams, who testified that she had been waiting for Burr outside the store when she heard a shot and then saw Burr come out.  The State provided some circumstantial evidence in corroboration.  The following day, however, Williams took the stand for the defense and recanted her testimony of the previous day.  This time she swore that she had not been with Burr at all on the morning of the murder, and recited a different account of her actions that morning.  The defense produced witnesses to support this testimony, including an eyewitness who placed Williams elsewhere at the time of the murder.  The defense attempted to establish that Williams' first testimony had been the product of coercion by the prosecutor; the State, in turn, attempted to show that her second testimony was contrived out of fear of petitioner.  Without

Williams' first testimony, the State would not have had a case, for while the State introduced evidence implicating Burr in similar robberies of other convenience stores, it adduced no other evidence directly linking Burr with this crime. The jury returned a verdict of guilty.

At the sentencing hearing, defense counsel devoted his entire closing argument to the inconclusive nature of the evidence against Burr. Counsel drove home to the jury the fact of Domita Williams' recantation, repeatedly exhorting each juror to "ask yourself . . . , is it possible that I'm recommending death for an innocent person?" Suggesting that the guilty verdict might have been based on the evidence of the other robberies, he admonished the jury, "if you go back and recommend death . . . and Mr. Burr is eventually electrocuted and put to death, then it's going to be a little too late for the truth to come out . . . ." He concluded, "don't make a recommendation where a man is going to die when he may not have even committed the crime."

The jury recommended a sentence of life imprisonment. The trial judge, however, overrode this recommendation and sentenced petitioner to death, having identified three aggravating circumstances and nothing in mitigation. Petitioner deduced, and argued on appeal, that the jury's recommendation of life had been based, legitimately, on residual doubt of Burr's guilt. The Florida Supreme Court rejected this argument, concluding that "a 'convicted defendant cannot be "a little bit guilty."'" 466 So. 2d 1051, 1054 (1985), quoting *Buford* v. *State*, 403 So. 2d 943, 953 (Fla. 1981), cert. denied, 454 U. S. 1164 (1982).

II

Implicit in the Florida Supreme Court's decision is an assumption about the equation of finality and truth that transgresses law and intuition alike. For our legal system is no pretender to absolute truth. In two important ways, the factfinding process falls short of that ideal. First, the beacon of the truth-seeking process in criminal cases is not absolute certainty, but the "reasonable doubt" standard, which has eluded definition by the courts for centuries. See 9 J. Wigmore, Evidence § 2497 (J. Chadbourn rev. 1981). Attempts at such a definition typically, and often erroneously, include phrases such as "substantial doubt, not a trivial doubt," *Holland* v. *United States*, 209 F. 2d 516, 522 (CA10), aff'd, 348 U. S. 121 (1954), and "substantial, . . . real doubt," *Tay-*

*lor* v. *Kentucky*, 436 U. S. 478, 488 (1978). Although a uniform definition of the term has never evolved, it is clear that juries are not instructed to return a verdict only when all doubt has been eliminated. Rather, the "reasonable doubt" standard merely attempts "to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington* v. *Texas*, 441 U. S. 418, 423 (1979). Hence, "beyond a reasonable doubt" cannot ensure that a jury will not convict a defendant without foreclosing all possibility of innocence in the jurors' own minds.

Moreover, no instruction can prevent the possibility of human error. "[I]n a judicial proceeding in which there is a dispute about the facts of some earlier event, the factfinder cannot acquire unassailably accurate knowledge of what happened." *In re Winship*, 397 U. S. 358, 370 (1970) (Harlan, J., concurring). Accordingly, the institutions of criminal justice have been adjusted in recognition that a jury's verdict and truth are not unerringly synonymous. Every jurisdiction provides some mechanism for awarding a convicted defendant a new trial on the basis of newly discovered evidence. If a convicted defendant can produce sufficient indication that the jury's finding of guilt beyond a reasonable doubt was wrong, the institutional need for finality yields to the more compelling concerns of truth and fairness. Thus, the "reasonable doubt" foundation of the adversary method attains neither certainty on the part of the factfinders nor infallibility, and accommodations to that failing are well established in our society. See also *Jackson* v. *Virginia*, 443 U. S. 307, 317–318 (1979) (reversal of jury verdict supported by insufficient evidence). In the capital sentencing context, the consideration of possible innocence as a mitigating factor is just such an essential accommodation.

Prominent scholars of our time agree. The Model Penal Code absolutely precludes the imposition of a death sentence if the sentencer is satisfied that, "although the evidence suffices to sustain the verdict, it does not foreclose all doubt respecting the defendant's guilt." ALI, Model Penal Code § 210.6(1), p. 107 (1980). Three Justices of this Court have stated that the possibility of an irrevocable mistake is a valid reason for a jury to conclude that the death penalty is not morally justified. *Spaziano* v. *Florida*, 468 U. S. 447, 488, n. 34 (1984) (STEVENS, J., joined by BRENNAN and MARSHALL, JJ., concurring in part and dissenting in part); *Heiney* v. *Florida*, 469 U. S. 920, 924 (1984) (MARSHALL, J., dissenting). Finally, two Courts of Appeals have determined that

jurors may hold a *genuine*, if not a *reasonable*, doubt of guilt suffi-cient to support a sentence of life. *Smith* v. *Wainwright*, 741 F. 2d 1248, 1255 (CA11 1984), cert. denied, 470 U. S. 1087 (1985); *Smith* v. *Balkcom*, 660 F. 2d 573, 580–581 (CA5 1981), cert. denied, 459 U. S. 882 (1982).

I have written before to describe the subjective personal horror that must face a juror who contemplates sentencing a man to die without being sure of his guilt. *Heiney* v. *Florida, supra,* at 921–922. But there is an additional point to be made: that per-mitting the consideration of lingering doubt at sentencing is objec-tively a rational and consistent element of our system of criminal justice. Like postconviction remedies in light of new evidence, the conscience of the jury serves to protect against irremediable errors arising in that gray area known as "reasonable doubt." And when the stakes are life and death, the Constitution forbids the closure of that safety valve, as surely as it forbids the preclu-sion of other considerations suggesting that a convicted defendant should not die. See *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982).

The defendant who has been condemned to die will not reap the benefits of postconviction remedies designed to compensate for jury fallibility when the basis for such relief arises long after conviction. His only protection lies in the consciences of the jurors, for only they know the degree of certainty with which they voted the defendant guilty.* The State of Florida would wrest from the jurors their only way of expressing their lingering doubts about their verdict, and from the defendant his only hope of vindication.

## III

We cannot know the basis for a jury's recommendation of life, as long as the jury is not required to supply its reasons. Neverthe-less, in petitioner's case we do know several relevant things. First, we know that little, if any, mitigating evidence other than the possibility of innocence could have accounted for the jury's sentence. Second, we know that the defense counsel rested his

---

*To the extent that a jury recommendation of life based on doubt can be said to be inconsistent with that same jury's finding of guilt, the legitimacy of the guilty verdict itself is rendered unreliable and therefore constitutionally suspect. The remedy for such a defect is not a death sentence, but a new trial.

plea for his client's life solely on the striking inconclusiveness of the evidence against petitioner, conceding that this argument had not carried the day at the guilt phase, but imploring the jurors to consider it as a matter of conscience at sentencing. Third, we know that the Supreme Court of Florida considered petitioner's claim on its merits, without questioning the factual premise of the argument, and ruled that doubt as to a convicted defendant's guilt cannot be considered as a factor mitigating against the death sentence. This determination bars consideration of a factor that is both relevant, see *Eddings, supra*, at 113–114, and reasonable, see *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975). Under these compelling circumstances, this Court should not shrink from correcting a misguided principle of law that so surely increases the likelihood that innocent people will go to their deaths.

Rather than bristle at a superficial inconsistency between a guilty verdict and a life sentence based on doubt, we should readily acknowledge that a juror may understand the law to demand less than the conscience. In a capital case, the Eighth Amendment does not tolerate such a distinction.