JOANOS, Judge,
dissenting.
It appears somewhat strange that in this situation the state sought an adjudication of delinquency on both battery and conspiracy to commit battery. The factual circumstances seem to present a clearcut case of battery, yet the state sought to make out an additional charge of conspiracy to commit battery against the accused. After all, under sections 39.10 and 39.11, Florida Statutes (1985), a determination of delinquency on just battery alone would provide the same options of disposition as would findings of delinquency on both charges. In addition, I find it interesting that the defense has appealed only one of the two adjudications of guilt. Success on appeal is very unlikely to affect the disposition in this case because, again, the Circuit Judge will have the same options available for one conviction as he had for two.
Apparently the appeal of one conviction in this case is a spin-off of the adoption of the new method of sentencing adults, that is, the sentencing guidelines method. This case is an example of what can happen when the number of adjudications become important to later possible sentences. We are now dealing with numbers on a score-sheet and specific numbers of previous adjudications, rather than with a sentencing judge being able to evaluate an overall sentencing situation. As a result, the num *1029 ber of adjudications of delinquency that emanate from a single situation has taken on a new significance, and the increase in litigation and the complexities of litigation that we have previously seen on the adult level have now spread into the juvenile setting. I find that unfortunate, since, in my view, juvenile court should be a place where matters are addressed in a direct and uncomplicated manner. It is enough to expect the juvenile system to deal with the problems of youth in the present context, without having to look out for what the numbers might be on future scoresheets. Consequently, I find it unfortunate that in this case, it was deemed necessary to charge conspiracy in addition to the clear charge of battery.
Consistent with my concept of the juvenile system, I favor viewing this case as a battery case, rather than a battery and conspiracy case, and agree with the majority opinion to that extent. However, I am not the prosecutor. The prosecutor must decide what charges to bring. If the charges fit, then it is up to the finder of fact and the courts to uphold the law. Since this was juvenile court, the trial judge was also the finder of fact, and he determined that the evidence and law fit with regard to both charges. My view of the evidence, accurately described in the majority opinion, is that it was sufficient to support the adjudication on both charges. On appeal, we should not substitute our view for that of the finder of fact. Therefore, I respectfully dissent from the majority’s decision to reverse the adjudication on the conspiracy charge.
I particularly refuse to concur in the majority’s view that unless the state directly attacks the credibility of a witness that it called, it is “bound” by everything a witness has said. I thought such views of the law of evidence went out with the adoption of our modem Florida Evidence Code. Obviously, triers of fact should be able to conclude that a witness has been truthful as to some matters and untruthful as to others. See Burr v. State, 466 So.2d 1051, 1053 (Fla.), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985).
The common law rule which forbids a party to impeach his own witness has been retained at § 90.608(1), Fla.Stat. (1985). The portions of § 90.608 relevant to this case state:
(1) Any party, except the party calling the witness, may attack the credibility of a witness ...
[[Image here]]
(2) A party calling a witness shall not be allowed to impeach his character as provided in s. 90.609 or s. 90.610, but, if the witness proves adverse, such party may contradict the witness by other evidence or may prove that the witness has made an inconsistent statement at another time, without regard to whether the party was surprised by the testimony of the witness. Leading questions may be used during any examination under this subsection. (e.s.)
The reasons for the rule are that (1) the party calling the witness vouches for the witness’ trustworthiness, and (2) the power to impeach is the power to coerce the witness to testify as desired. McCormick’s Handbook of the Law of Evidence § 38 (E.W. Cleary 2d ed. 1972). McCormick points out, however, that—
The answer to the first reason is that, except in a few instances such as character witnesses or expert witnesses, the party has little or no choice of witnesses. He calls only those who happen to have observed the particular facts in controversy. The answers to the second reason are (a) that it applies only to two kinds of impeachment, the attack on character and the showing of corruption, and (b) that to forbid the attack by the calling party leaves the party at the mercy of the witness and his adversary. If the truth lies on the side of the calling party, but the witness’s character is bad, the witness may be attacked by the adversary if he tells the truth; but if the witness tells a lie, the adversary will not attack him and the calling party, under the rule, cannot. Certainly it seems that if the witness has been bribed to change his story, the calling party should be *1030 allowed to disclose this fact to the court, (e.s.)
McCormick suggests that the calling and examination of an attesting witness does not constitute adoption of that witness’s testimony. Id. Clearly, a party calling a witness who proves adverse, does not adopt that witness’s testimony. § 90.608(2), Fla. Stat. (1985); Fla.R.Civ.P. 1.450(a). Furthermore, a party—
need not be named in the pleadings in opposition to the party calling him, to be called an adverse party witness, (citation omitted).... the test is whether the party sought to be called “occupied an adverse position toward” the party seeking to call him (citation omitted) and could have been named as a party.
Smith v. Fortune Insurance Company, 404 So.2d 821, 823 (Fla. 1st DCA 1981). Accord Austin v. State, 461 So.2d 1380, 1383 (Fla. 1st DCA 1984) — to be considered adverse, “the witness must give testimony prejudicial to the cause of the party calling him.”
It is well settled that self-interest of a witness in the outcome of a case is a factor affecting that witness' testimony. See, generally, Ehrhardt, Florida Evidence § 608.4 (2d Ed. 1984); McCormick, Evidence § 40 (E.W. Cleary 2d ed. 1972), and cases cited therein. Self-interest in a criminal case may be shown when the witness testifies for the state and it is shown that an indictment is pending [or could be], or that he is an accomplice or co-defendant in the. crime on trial. McCormick, at 79-80. See also Thornes v. State, 485 So.2d 1357, 1359 (Fla. 1st DCA 1986), review denied, 492 So.2d 1335 (Fla.1986) — no requirement that the state and witness have entered into a formal agreement regarding immunity from or a threat of criminal prosecution before the witness’s bias or prejudice might be shown; Jackson v. State, 468 So.2d 346 (Fla. 1st DCA 1985) — in a non-jury trial, when the major part of the state’s case depended upon the testimony of one witness, trial court erred in refusing to consider proffered testimony that the witness made advances to appellant’s girl friend and threatened to get even with appellant.
One of the leading federal cases on this question is Johnson v. Baltimore & O.R. Co., 208 F.2d 633 (3rd Cir.1953), cert. denied, 347 U.S. 943, 74 S.Ct. 639, 98 L.Ed. 1091 (1954). The case concerns an action for wrongful death brought by the adminis-tratrix of Johnson’s estate. Hall, a railroad policeman, shot and killed Johnson in the course of attempting to take him into custody. Hall’s defense was self defense. The only witnesses to the actual shooting were Hall and Johnson, and Johnson died two hours later. At trial, at the judge’s suggestion, Hall was called as a witness for the plaintiff. The court said: “The main question in the case is whether there is some rule of law which says his story [Hall’s] must stand for the purpose of this litigation as a true account of the transaction whether the jury believed it or not.” 208 F.2d at 634.
The court, citing Wigmore, concluded “when witnesses are called, in some stranger’s lawsuit, to tell about things they saw, heard, or did, there is no reason in logic or common sense or fairness why the party who calls them should have to vouch for everything they said.” Id., at 635. According to the court, in such circumstances it would be only natural for Hall to make his story show the propriety of his own conduct — “And what could be sillier than to insist that the jury is compelled to believe all that testimony which the witness offered in explanation of an intentional killing on his part?” Id., at 636. Accord United States v. Freeman, 302 F.2d 347 (2d Cir.1962), cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963); Dill v. Scuka, M.D., 279 F.2d 145 (3rd Cir.1960); O’Shea v. Jewel Tea Co., Inc., 233 F.2d 530, 535 (7th Cir.1956).
In summary, Florida has retained the common law rule which held that a party calling a witness generally vouches for his trustworthiness. Nevertheless, this does not mean that when the state calls a witness, it should be totally bound by everything that the witness says. The case before us points up the rationale for inter *1031 preting the rule otherwise. Julie Logsdon arranged the meeting which led to the criminal charges which are the subject of this appeal. Since she was identified by the victim as an eye-witness to the battery, the state was obligated to call her as a witness. By the same token, Julie Logs-don’s admission that battery was contemplated would have been an invitation to the state to file criminal charges against her. Although the state could have asked the trial court to declare the witness implicitly adverse, such a declaration was unnecessary in light of the trial court’s dual role in this case. The trial court, sitting as trier of fact, could not be expected to ignore Logsdon's self-interest in determining whether to accept her testimony in toto.
I would affirm.