576 So.2d 1291 (1989)
Antonio M. CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 71714.
Supreme Court of Florida.
October 19, 1989.
Rehearing Denied April 16, 1991.
James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Chief, Capital Appeals, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Paula C. Coffman, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Antonio Carter appeals his judgments, his life sentence, and sentence of death for two counts of murder in the first degree. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. After reviewing the briefs and records, we find no reversible error and therefore affirm the judgments and sentence.
On April 15, 1986, the bodies of Roy Patel and Fred Haberle were found shot to death in Patel's small grocery store in Daytona Beach, Florida. Prior to trial, four mental health experts examined Carter to determine whether he was competent to stand trial. One doctor believed Carter *1292 was not competent, while the other three found him competent to stand trial. Of those three, two doctors believed that temporary hospitalization and observation was necessary for a complete determination of competency. The trial court denied Carter's motion for temporary hospitalization and found Carter competent to stand trial.
At trial, Leland Perry testified that as he approached the store he heard what sounded like gunshots emanating from within the store. Perry entered the store where he saw Haberle lying on the floor and a man with a steel revolver standing over him. Perry positively identified this man as Antonio Carter. Carter ordered Perry to walk out of the store, and Perry complied. Carter then fled on foot. A gun with Carter's left middle fingerprint on it was recovered approximately five blocks from the store. Ballistics tests revealed that this gun was used to shoot Patel and Haberle.
With this evidence and testimony, the jury returned verdicts of guilt on two counts of first-degree murder. Following a sentencing hearing the jury returned a recommendation of life imprisonment for the murder of Haberle and a recommendation of death for the murder of Patel. The trial court found the following aggravating circumstances with respect to Patel: (1) Carter was under sentence of imprisonment at the time of the capital felony (parole); (2) Carter was previously convicted of prior violent felonies (armed robbery; the murder of Fred Haberle); (3) the capital felony was committed while Carter was engaged in the commission of a robbery. In mitigation, the trial court found only that Carter suffered from a deprived childhood, a nonstatutory mitigating circumstance. The court followed the jury recommendations on both counts and sentenced Carter to death for the murder of Roy Patel.

GUILT PHASE
Carter raises two arguments concerning the guilt phase of the trial. The first concerns Carter's absence during a portion of the voir dire. As Carter concedes, we have previously decided that when, as here, a defendant acquiesces to his absence from a stage of the proceeding, there is no error. Herzog v. State, 439 So.2d 1372 (Fla. 1983). We decline Carter's invitation to reconsider this issue.
The second argument raised by Carter involves his mental state at the time of trial. Carter alleges the trial court erred in finding him competent to stand trial and in denying his motion to be hospitalized for a more in-depth examination. In competency determinations, the trial court is the finder of fact. It is incumbent upon the court to consider all evidence relative to competence and to render a decision on that basis. Such a decision will stand absent a showing of abuse of discretion. Bates v. State, 506 So.2d 1033 (Fla.), cert. denied, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987); Fowler v. State, 255 So.2d 513 (Fla. 1971). No showing of abuse of discretion had been made here. We reject Carter's allegations that the three experts who evaluated him and found him competent conducted incomplete or "unprofessional" examinations. The only standard for determining competency to stand trial is whether Carter understood the charges against him and whether he could assist in his defense. There is competent and substantial evidence on the record to support the trial court's conclusion that Carter was competent to stand trial applying this standard.

SENTENCING PHASE
Carter raises several issues regarding the manner in which the sentencing proceeding was conducted and the sentence he received. First, he argues the trial court failed to consider evidence in mitigation that Carter suffered from some form of mental deficiency at the time of the shootings. He contends that since each examining expert found some degree of mental deficiency, the trial court was required to accept these "overwhelming" findings in mitigation. We disagree. The psychological evaluations of Carter were less than unequivocal. Only one expert believed Carter was mentally retarded, while one believed that Carter was sociopathic, a condition that cannot be considered *1293 in mitigation. The other two experts, in finding Carter competent to stand trial, declined to diagnose any specific mental deficiency. Moreover, Carter cannot point to anything in the record which evidences a failure to consider any evidence in mitigation. The trial court did in fact consider all elements of Carter's character and record and decided that the evidence of mental deficiency was not sufficient to support a factor in mitigation.
Carter next alleges that the trial court should have instructed the jury that it could consider the mental health evidence in mitigation. However, the only evidence of mental deficiency before the jury was the testimony of Carter's cousin that Carter could not have been in his right mind at the time of the offense. Nonetheless, the trial court did instruct the jury that it could consider any aspect of Carter's character, record, or circumstances of the offense in mitigation. This instruction sufficiently alerted the jury to the fact that it could consider the slim evidence of Carter's mental deficiency in mitigation. Therefore, we find no error as to this point.
Carter next argues that the death penalty is disproportionate in this case because it is merely a case of a "robbery gone bad." He argues that the aggravating circumstances are not particularly compelling and that the evidence in mitigation outweighs these factors. Again, we disagree. The three aggravating factors found are supported by competent and substantial evidence and far outweigh the nonstatutory mitigating circumstance of Carter's deprived childhood. Accordingly, the sentence of death was proportionally applied in this case. Burr v. State, 466 So.2d 1051 (Fla.), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985).
The next issue raised by Carter involves the prosecution's decision to seek the death penalty. Carter alleges that this decision was based in large part on the prosecutor's consultations with the victims' families, who told the prosecutor that they would like Carter to receive the death penalty. Carter argues that this consultation violated the United States Supreme Court's decision in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). However, as we held in Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), contemporaneous objection at trial is required before this Court will entertain any issue based on Booth. Accordingly, we reject this claim without reaching its merits.
Carter also argues that the trial court should have sustained his objection to the jury instruction allowing the jury to find the aggravating factor that the capital felony was committed by Carter while he was under a sentence of imprisonment based on Carter's parole. As Carter concedes, we have expressly approved this instruction under these facts. Johnson v. State, 442 So.2d 193 (Fla. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984). We decline Carter's invitation to reconsider Johnson.
Next, Carter alleges that the trial court improperly diminished the role of the jury in Florida's capital sentencing scheme contrary to the United States Supreme Court's holding in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). However, the record clearly reveals that Carter did not object to any statement or instruction by the court on this ground. We have repeatedly held that the failure to contemporaneously object on Caldwell grounds constitutes a waiver of that issue on appeal. Combs v. State, 525 So.2d 853 (Fla. 1988); Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). Thus, we reject this claim without reaching the merits.
Carter raises issues concerning the weight given to the jury's recommendation of death and the constitutionality of the death penalty in Florida. Both of these claims are without merit, and we reject them without discussion.
Finally, Carter alleges that because he is mentally retarded, he should not be executed. The issue of whether the eighth amendment precludes the execution of a *1294 mentally retarded person was recently decided by the United States Supreme Court. Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (eighth amendment does not categorically prohibit the execution of mentally retarded capital murderers). However, the evidence that Carter is mentally retarded is so minimal as to render the Penry issue irrelevant. Of the experts who examined Carter, only one found Carter was "borderline mentally retarded." We believe that this evidence is insufficient to require a reversal of Carter's sentence or a remand for a hearing on the issue of his retardation.
Accordingly, we affirm both Carter's judgment of guilt and his sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.