578 So.2d 685 (1990)
James Ernest HITCHCOCK, Appellant,
v.
STATE of Florida, Appellee.
No. 72200.
Supreme Court of Florida.
December 20, 1990.
Rehearing Denied May 16, 1991.
*687 Richard L. Jorandby, Public Defender and Steven H. Malone and Eric M. Cumfer, Asst. Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
In 1977 a jury convicted Hitchcock of first-degree murder and recommended the death penalty, which the trial court imposed and this Court affirmed. Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 *688 (1982).[1] After the signing of Hitchcock's death warrant, this Court affirmed the trial court's denial of postconviction relief. Hitchcock v. State, 432 So.2d 42 (Fla. 1983). The United States Supreme Court, however, vacated Hitchcock's sentence because "the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances, and ... the proceedings therefore did not comport with the requirements of Skipper v. South Carolina, 476 U.S. [1], 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion.)" Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987). Hitchcock now appeals the death sentence imposed on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm the sentence.
The instant sentencing proceeding extended over several days. The state presented numerous witnesses, including the victim's mother and stepfather (Hitchcock's brother). Hitchcock's witnesses included his mother, two sisters, two nieces, and a cousin, who testified about Hitchcock's life and background and his relationship with them; his former attorney, who testified about Hitchcock's improving himself since being imprisoned; a psychologist and a sociologist, who testified about Hitchcock's current social abilities and character and his future nondangerousness; eight fellow inmates on death row, who testified to Hitchcock's positive acts while imprisoned; and Hitchcock himself, who testified to all of the above matters. The jury recommended that Hitchcock be sentenced to death. After receiving that recommendation and releasing the jury, the court heard additional evidence. The court found four aggravating factors (committed while under sentence of imprisonment, committed during a sexual battery, committed to avoid or prevent arrest, and especially heinous, atrocious, or cruel) and considered several items of mitigation (age, deprivations, character traits, and use of drugs and alcohol). Finding that the mitigating factors did not weigh heavily against those in aggravation, the court sentenced Hitchcock to death.
Hitchcock raises numerous issues on appeal, some of which do not merit discussion.[2] Turning to the issues which must be discussed, Hitchcock claims that the trial court improperly refused to grant his challenges for cause to three prospective jurors, thereby forcing him to use peremptory challenges to remove them from the jury.[3] "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Deciding whether a prospective juror meets the Lusk test is within a trial court's discretion, Pentecost v. State, 545 So.2d 861 (Fla. 1989), based upon what the court hears and observes. See Reed v. State, 560 So.2d 203 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). After examining the record, we find no abuse of discretion because the court's refusal to excuse these persons met *689 the Lusk standard.[4]
Even if we found that the court should have granted the challenges for cause, such error would be harmless because Hitchcock has shown no prejudice from having to exercise peremptory challenges to remove those persons. The court gave Hitchcock one additional peremptory challenge, but denied his request for a second. Hitchcock, however, did not point to any juror remaining on the panel that he wished to challenge. Trotter v. State, 576 So.2d 691 (Fla. 1990); Floyd v. State, 569 So.2d 1225 (Fla. 1990); Pentecost. We therefore find no merit to this claim.
Hitchcock also claims that the trial court prevented him from presenting mitigating evidence. Hitchcock proffered the following items: 1) Hitchcock's former attorney's relating a) Hitchcock's friendship with an inmate executed in 1984 and how that execution affected Hitchcock, b) changes he had seen in Hitchcock since his being imprisoned compared to other death row inmates the attorney had been involved with, c) hearsay statements of three now-deceased people who had known Hitchcock in Arkansas, and d) that another death row inmate, with whom Hitchcock had tried to escape, had been resentenced to life imprisonment despite that attempt; 2) claims by Hitchcock's sisters that their brother Richard had exhibited physical and sexual violence toward them while they were growing up; 3) trial transcripts of testimony of two police officers as to Hitchcock's appearance when arrested and his cooperation at that time; 4) the sociologist's theories that a) Hitchcock's execution would not deter others from committing murder, b) it would cost less to imprison Hitchcock for life than to execute him, c) lingering doubt as to Hitchcock's confession, d) the conditions Hitchcock would face under a sentence of life imprisonment, and e) the level of premeditation in this killing in light of Hitchcock's educational level; 5) the report prepared by the psychologist for Hitchcock's 1983 clemency hearing and a study comparing life- and death-sentenced killers and the psychologist's opinion that Hitchcock more closely matched murderers who received life sentences; and 6) the state's offer of life imprisonment in return for a guilty plea. The court rejected the testimony in item 1 as irrelevant, as inadmissible opinion testimony, and as irrebuttable hearsay about which the state had no notice. The court found the testimony in item 2 inadmissible because lingering doubt has been rejected as mitigating evidence. The court held that the trial transcript could not be introduced because the officers' unavailability had not been established (item 3). The court rejected items 4 through 6 as irrelevant.
The United States Supreme Court directed that Hitchcock be resentenced "in a proceeding that comports with the requirements of Lockett." 481 U.S. at 399, 107 S.Ct. at 1825. Lockett requires that a sentencer "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604, 98 S.Ct. at 2964-65 (emphasis in original, footnote omitted). After making this statement, the Court noted: "Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Id. at n. 12. Therefore, "the State cannot bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial." Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 1261, 108 L.Ed.2d 415 (1990) (emphasis supplied).
As to the court's rejection of Hitchcock's former attorney's proffered testimony, we find items a, b, and d clearly irrelevant to Hitchcock's character, prior record, or the circumstances of the crime at the time of this killing. Capacity for rehabilitation can be mitigating evidence, Skipper, *690 and it is possible that some people might view items a and b as tending to show that Hitchcock might be capable of rehabilitating himself. Even if the court should have allowed testimony as to those two items, however, any error would be harmless because most of Hitchcock's other witnesses testified to how they believed he had changed since being imprisoned. Although an accomplice's disproportionate sentence can be argued in mitigation, Hitchcock's accomplice in the attempted escape had nothing to do with the instant crime, for which only Hitchcock was charged and convicted. Item d, therefore, is absolutely irrelevant to this case.
Regarding item c, Hitchcock argues that, although the state's introducing hearsay in a penalty proceeding is limited to that hearsay which a defendant is given the opportunity to rebut,[5] a defendant's ability to introduce hearsay is unlimited. While the rules of evidence have been relaxed somewhat for penalty proceedings, they have not been rescinded. We find no merit to Hitchcock's claim that the state must abide by the rules but that defendants need not do so. Additionally, even if admissible, the hearsay statements would have been merely cumulative to other testimony about Hitchcock's past.
Hitchcock argues that his sisters should have been allowed to testify about his brother to create lingering doubt about Hitchcock's having committed this murder (item 2). There is, however, no constitutional right to have lingering doubt about a defendant's guilt considered as a mitigating factor. Franklin v. Lynaugh, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).[6] Hitchcock's being found guilty is the law of this case, and this Court has consistently held that lingering doubt is not appropriate mitigating evidence. Thomas v. State, 546 So.2d 716 (Fla. 1989); King v. State, 514 So.2d 354 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); Aldridge v. State, 503 So.2d 1257 (Fla. 1987); Burr v. State, 466 So.2d 1051 (Fla.), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985); Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). The trial court, therefore, did not err in excluding this testimony.[7]
The court also correctly rejected the trial transcript of the police officers' testimony (item 3). As stated previously, the rules of evidence apply to defendants as well as the state in penalty proceedings. For the transcripts to have been admissible, Hitchcock would have had to demonstrate the officers' unavailability.
Finally, we agree with the trial court's ruling that the information in items 4 through 6 is irrelevant because it did not relate to Hitchcock's character or prior record or to the circumstances of the crime. To the extent that some isolated statements might reflect on Hitchcock's past or how he had changed, that information would be cumulative to other witness' testimony, and, thus, any error would be harmless. The state mentioned her 1983 clemency report during cross-examination of the psychologist, but the defense did not demonstrate the relevance of that report as an addition to her live testimony. Hitchcock argues that the state's offer of a plea means that the state originally thought life imprisonment would be appropriate. We do not see how the fact that an offer might have been made is relevant because, obviously, Hitchcock rejected the offer, rendering it a nullity. We find no meritorious attack on the state's "credibility" here because decisions regarding plea offers are discretionary with the prosecutor. See Downs v. State, 572 So.2d 895 (Fla. 1990). In the absence of reversible error, we find *691 that the court's rulings on the presentation of evidence comported with the dictates of Lockett.
Hitchcock next claims that the court erred in allowing the state to read into evidence the trial transcript of a hair analyst's testimony because the state did not demonstrate her unavailability. At the time of resentencing, the hair analyst no longer worked for the state, and the state advised the court that a diligent search had failed to locate her. We see no error in the court's finding this witness to be unavailable. Moreover, because the court admitted her entire testimony, including cross-examination, no confrontation clause violation occurred. See Chandler v. State, 534 So.2d 701 (Fla. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989). Therefore, we find no merit to this issue.
Hitchcock also challenges the introduction at resentencing of his original confession which had been introduced at trial and of a letter to his mother in which he confessed to killing the victim. "A resentencing is not a retrial of the defendant's guilt or innocence." Chandler, 534 So.2d at 703. The voluntariness of his confession had been determined at trial and was not at issue in the resentencing. See Chandler. Regarding the letter, Hitchcock admitted on cross-examination that he had written it. The defense did not object to its voluntariness, and we find no error in allowing the state to introduce the letter to impeach Hitchcock's claim that he did not kill the victim.
During her testimony, the victim's mother described her daughter, and the state argued her personal characteristics to the jury. Hitchcock now claims that this testimony and argument violated Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). Although Booth disapproved admitting victim impact statements at penalty proceedings, it recognized that "[s]imilar types of information may well be admissible because they relate directly to the circumstances of the crime... . Moreover, there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant." 482 U.S. at 507 n. 10, 107 S.Ct. at 2535 n. 10.
The complained-about testimony was a dispassionate description of the victim's characteristics and directly rebutted Hitchcock's claim that she consented to having sexual intercourse with him. It was, therefore, relevant. Cf. Bertolotti v. State, 565 So.2d 1343 (Fla. 1990) (testimony that poor health prevented victim from having intercourse with her husband relevant to whether sexual battery had occurred). Although prejudicial because it contradicted Hitchcock's contention, the testimony was not introduced to inflame the jury against Hitchcock or to create sympathy for the victim or her family as prohibited by Booth. We find no error in the admission of this testimony. Hitchcock has demonstrated no reversible error regarding the prosecutor's argument.
Eight death row inmates testified on Hitchcock's behalf. He now claims that the special security measures taken to guard them, and publicity about those measures, and the knowledge that these men had been sentenced to death unduly prejudiced him and denied him a fair hearing. We find no merit to these claims.
"The mere existence of extensive pretrial publicity is not enough to raise the presumption of unfairness of a constitutional magnitude." Bundy v. State, 471 So.2d 9, 19 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). The trial court conducted individual voir dire regarding publicity and scrupulously guarded Hitchcock's right to an impartial jury. Before denying Hitchcock's motion to strike the panel, the judge heard the only prospective juror called by the defense. This man stated that he had observed police cars, officers, and weapons, but that he did not know what was happening and did not ask, nor was he told, about what was taking place. The court correctly held that Hitchcock failed to demonstrate undue prejudice.
*692 The first inmate stated on direct examination: "I spent some time with [Hitchcock] on the row for about three years, but I'm no longer on death row." The court told the prosecutor that he could not question this witness about the specifics of his case. When asked on cross-examination where he met Hitchcock, the inmate stated: "I was on death row." The court, over defense objection, allowed the state to question this first inmate on his feelings about the death penalty to reveal any bias he might have on the subject. Although invited by the court to do so, Hitchcock did not object to the state's questioning the other inmates about possible bias after the first witness established his. Exploring a witness' bias is a proper subject for cross-examination. Steinhorst v. State, 412 So.2d 332 (Fla. 1982); Taylor v. State, 139 Fla. 542, 190 So. 691 (1939). We find no abuse of discretion regarding this claim.
The court granted Hitchcock's motion to preclude mention of his prior death sentence, but refused to give the jury Hitchcock's proposed instruction on why resentencing was necessary.[8] Hitchcock now claims that the jurors' and potential jurors' knowledge of his previous sentence from pretrial publicity was unlawfully prejudicial and that the court's refusing his proposed instruction compounded that prejudice. We disagree.
Although a vacated death sentence should not play a significant role on resentencing, mention of a prior sentence does not mandate reversal. Teffeteller v. State, 495 So.2d 744 (Fla. 1986). Here, as stated previously, the court conducted individual voir dire to weed out prospective jurors who had been unduly influenced by pretrial publicity and instructed the jury correctly with the standard instructions. The instant jury was not told the previous jury's recommendation, and Hitchcock has not demonstrated undue prejudice. We find no abuse of discretion in the court's refusal to give the proposed instruction.
Hitchcock objected to the court's instructing the jury on the aggravating circumstance of murder committed during the commission of a felony because "[t]here is no conviction for sexual battery in this case... . I believe that it would be misleading to the jury to suddenly insert an instruction on a crime that Mr. Hitchcock has not been convicted of." The court denied the objection and gave the standard instruction on this aggravator. Hitchcock now claims that the instruction was defective because it "specified no element which must be proven beyond a reasonable doubt."
This claim has not been preserved for appellate review because Hitchcock did not raise the now-presented ground in the trial court. Bertolotti v. Dugger, 514 So.2d 1095 (Fla. 1987). Moreover, if this claim had been properly preserved, we would find it to have no merit because "[t]he state need not charge and convict of felony murder or any felony in order for a court to find the aggravating factor of murder committed during the course of a felony." Occhicone v. State, 570 So.2d 902, 906 (Fla. 1990). Additionally, the elements of an underlying felony do not have to be explained with the same particularity required if that felony were the primary offense charged. Vasil v. State, 374 So.2d 465 (Fla. 1979), cert. denied, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980).
Turning to the actual sentence, Hitchcock argues that the court erred in finding four aggravating circumstances and that his death sentence is disproportionate. The evidence, however, supports the court's findings.
That Hitchcock might not have meant the killing to be unnecessarily torturous does not mean that it actually was not unnecessarily torturous and, therefore, not heinous, atrocious, or cruel. This aggravator pertains more to the victim's perception of the circumstances than to the perpetrator's. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). Hitchcock stated that he kept "chokin' and chokin'" the victim, and hitting her, both inside and *693 outside the house, until she finally lost consciousness. Fear and emotional strain can contribute to the heinousness of a killing. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982). As Hitchcock concedes in his brief, "[s]trangulations are nearly per se heinous." See Doyle v. State, 460 So.2d 353 (Fla. 1984); Adams; Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). The court did not err in finding this murder to have been heinous, atrocious, or cruel.
The court stated that Hitchcock's claim that the victim consented to having intercourse "is not supported by the record." We agree and hold that the court did not err in finding the murder to have been committed during a sexual battery. Hitchcock's claim that instructing the jury in terms of "sexual battery" rather than "rape" is an ex post facto violation is without merit. See Tompkins v. State, 502 So.2d 415 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982); Adams.
Hitchcock has likewise demonstrated no error in the court's finding the murder to have been committed to prevent or avoid arrest. Hitchcock admitted that he killed the victim to keep her from telling her mother. Had she done so, this would undoubtedly have led to his arrest. Contrary to his current contention, we have never held that "[a]ctual, subjective awareness by the accused of an impending arrest must be proven beyond a reasonable doubt" before this aggravator can be found.
In our original opinion in this case, we noted that the court could have found committed by a person under sentence of imprisonment in aggravation because Hitchcock was on parole at the time of this crime. 413 So.2d at 747 n. 6. The court found this aggravator applicable on resentencing. Hitchcock now argues that this is an ex post facto violation and constitutes double jeopardy because this Court did not recognize parole as the equivalent of being under sentence of imprisonment until Aldridge v. State, 351 So.2d 942 (Fla. 1977), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). Resentencing proceedings, however, are completely new proceedings. King v. Dugger, 555 So.2d 355 (Fla. 1990). These ex post facto and double jeopardy claims are of no merit because the resentencing occurred after we released Aldridge. See Spaziano v. State, 433 So.2d 508 (Fla. 1983), aff'd, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
We also disagree with Hitchcock's claim that his death sentence is disproportionate. The court conscientiously weighed the aggravating circumstances against the mitigating evidence and concluded that death was warranted. The cases Hitchcock relies on are distinguishable, being primarily jury override cases, e.g., Holsworth v. State, 522 So.2d 348 (Fla. 1988); Welty v. State, 402 So.2d 1159 (Fla. 1981), cases dealing with domestic disputes, e.g., Garron v. State, 528 So.2d 353 (Fla. 1988); Wilson v. State, 493 So.2d 1019 (Fla. 1986), and cases with few valid aggravating circumstances and considerable mitigating evidence, e.g., Songer v. State, 544 So.2d 1010 (Fla. 1989). On the circumstances of this case, and in comparison with other cases, we find Hitchcock's sentence of death proportionate to his crime. E.g., Tompkins; Doyle; Adams.
Finally, Hitchcock claims that the delay between his arrest (1976) and resentencing (1988) violates his right to a speedy trial and his due process rights and constitutes cruel and unusual punishment. He has, however, demonstrated no undue prejudice caused by the delay, and we find no merit to this claim.
Therefore, we affirm the death sentence imposed on resentencing.
It is so ordered.
OVERTON, McDONALD, EHRLICH and GRIMES, JJ., concur.
*694 KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
SHAW, C.J., dissents.
KOGAN, Justice, dissenting.
I find that the death penalty is disproportionate in this case. Therefore, I would reduce the sentence to life imprisonment without eligibility for parole for twenty-five years.
BARKETT, J., concurs.
NOTES
[1] The facts are set out in the opinion on direct appeal.
[2] The following issues have been decided adversely to Hitchcock's contentions: unconstitutionality of the instruction on heinous, atrocious, or cruel, Smalley v. State, 546 So.2d 720 (Fla. 1989); unconstitutionality of Florida's death penalty statute, see Walton v. Arizona, ___ U.S. ___, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), Blystone v. Pennsylvania, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), Smalley; jury instructions regarding sympathy toward the defendant, Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).
[3] The court granted challenges for cause to at least six prospective jurors because those persons were too pro death, not impartial, or stated that they could not follow the court's instructions.
[4] To the extent that Hitchcock argues that the court did not apply Singer v. State, 109 So.2d 7 (Fla. 1959), properly, that claim is barred now because he did not object at trial on the specific legal ground now advanced. Bertolotti v. State, 565 So.2d 1343 (Fla. 1990).
[5] § 921.141, Fla. Stat. (1989).
[6] Although it is stated in a plurality opinion, a majority of the Court agreed with this holding.
[7] Hitchcock's reliance on Downs v. State, 572 So.2d 895 (Fla. 1990), is misplaced. We found testimony about Downs' part in the crime admissible at his resentencing because the disparity between his actions and those of his accomplices, and their resultant sentences, might mitigate Downs' sentence. Hitchcock, however, had no accomplices.
[8] The defense did not submit a written copy of the proposed instruction.