117 So.2d 473 (1960)
James A. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
January 27, 1960.
Rehearing Denied February 22, 1960.
*474 Paul Lake, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
THOMAS, Chief Justice.
The evidence in this case which led to a verdict of guilty of murder in the first degree and the ultimate sentence of death in the electric chair was circumstantial and we will, therefore, judge it carefully by the rule lately announced in Davis v. State, Fla., 90 So.2d 629, and in the cases cited in that opinion.
The contention of the appellant that the judgment should be reversed poses two questions for decision by this court, namely, the sufficiency of proof to establish beyond a reasonable doubt that the appellant committed the crime charged in the indictment and the propriety of the trial judge's ruling permitting witnesses for the state to testify about an incident, in which appellant was an actor, that occurred about a month after the homicide.
The murder for which the appellant was condemned was committed in the H & K Market, 26 April 1958; the later crime, robbery, was perpetrated at the Blue Grass Market the 24th of the following month. Both places of business were located in St. Petersburg. In the former, Herman Kaplan was shot to death; in the latter, a man was wounded but not fatally.
Kaplan was shot six times with a .25 calibre automatic pistol as he was closing his store about 8:15 in the evening. No one actually witnessed the killing but a man working nearby heard the shots, saw the flashes and watched a Negro flee from the building. The body of the victim of the assault, which is not denied to have culminated in murder in the first degree, was found on the floor by the cash register. The drawer in the register was open and it contained no money except "change," although a day's trading had just ended.
There was testimony that at the time of the shooting the defendant was in the vicinity but witnesses called by him tended to establish an alibi. Their stories were conflicting and obviously were discarded by the jury.
Were we to stop here we would be compelled to conclude that the appellant's guilt had not been proved beyond a reasonable doubt. But we go from the H & K Market to the Blue Grass Market to describe the action there, in which the appellant assumed a leading role, and then we will turn to the links claimed by the State to couple the two events and, therefore, to connect the appellant with the earlier one.
The Blue Grass was robbed at closing time, about 8:15 P.M., by two Negroes, appellant and an accomplice named Isiah Cole. The butcher in the store was wounded by a pistol in the hands of appellant. The robbers fled to Tampa in a Pontiac automobile and there got into difficulties with the police. They were halted by two officers for minor infraction of a traffic regulation. Cole became very belligerent and appeared to the officers to be drunk so they arrested him. Appellant drove away in the car and shortly afterward returned afoot and undertook to convince the patrolmen they should release Cole. He, too, became threatening and was placed under arrest. Meanwhile the officers had searched Cole and found a large amount of money. When the appellant and Cole had been sent to the police station in the patrol wagon the policemen began a search for the car that lasted four hours. They found it parked several blocks away. Near the front door were two one-dollar bills and a short distance *475 away a twenty-dollar bill. In the trunk were a sizeable sum of money and two revolvers. One of the weapons was later identified as the property of the owner of the Blue Grass Market which had been wielded by the unfortunate butcher in an attempt to prevent the robbery; the other was eventually shown to have been the one from which was fired the bullet that wounded the butcher in the later robbery and the bullet that killed Kaplan on the earlier occasion. Because of this circumstance, upon which the state relied to connect the defendant with the two crimes hence to make relevant the evidence of the robbery perpetrated a month after the homicide, we do not think we need to dwell on cases in which it has been held that evidence of unrelated crimes is inadmissible. It had long been recognized that an exception to the rule existed when the execution of other criminal acts showed that the accused had been following a pattern or mode of operation. Talley v. State, 160 Fla. 593, 36 So.2d 201.
Inasmuch as the appellant, in his brief, concedes the clarity of the evidence that the bullet which killed Kaplan and the one which wounded the butcher came from the same gun, there is no occasion to elaborate on the testimony of the ballistic expert of the Federal Bureau of Investigation by whom this fact was established.
Some of the history of the lethal instrument seems appropriate. It was sold by an associate of Tampa Loan Company to one Ned Taylor whose brother obtained possession of it without the magazine and sold it to the appellant. A storekeeper testified that appellant attempted to purchase from him a magazine for a.25 calibre automatic. The accomplice, Cole, swore that the appellant shot the butcher with such a weapon.
All this reasonably places the weapon in the possession of the appellant for a period that spanned both crimes. The times they occurred correspond as do the characters of the places invaded. Plainly, the latter affair was a robbery and in all the circumstances it is logical to deduce that the earlier one was a robbery too. On both occasions human beings were wounded by gun fire. To repeat, one victim expired; the other survived.
The similarity of the circumstances surrounding the two raids, it seems to us, lifts the case out of the rule that a person may not be prejudiced by testimony of an added or different offense while facing a charge of a particular crime. We think, rather, that the matter falls within the rule announced recently in Williams v. State, Fla., 110 So.2d 654, fixing the criterion by which such testimony is to be tested and placing emphasis on the relevancy of the proof. Applied in this case, we think it is manifest that a later, similar, act by the appellant cast a brilliant light on his connection with the preceding criminal transaction.
We have not overlooked the fact that the similar offense in the instant case had been committed after the one for which the appellant was being tried, while in the cited case the situations were reversed. But when the matter pivots on the quality of relevancy there is no reason for rejecting the rule here.
It is obvious that the prosecution for the earlier crime was instituted because it was the more serious.
Inasmuch as evidence of the later crime was admissible only because of its relevancy to the identity of the accused and the murder weapon and the similarity of the pattern defined in the two incidents, the question then arises whether or not the state was permitted to go too far in introduction of testimony about the later crime so that the inquiry transcended the bounds of relevancy to the charge being tried, and made the later offense a feature instead of an incident. This may not be done for the very good reason that in a criminal prosecution such procedure devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant whose character is insulated *476 from attack unless he introduces the subject.
In the present case we are convinced that the testimony about the subsequent crime was so disproportionate to the issues of sameness of perpetrator and weapon and of design that it may well have influenced the jury to find a verdict resulting in the death penalty while a restriction of that testimony might have resulted in a recommendation of mercy, a verdict of guilty of murder of a lesser degree or even a verdict of not guilty.
It is the responsibility and obligation of this court to deal cautiously with judgments imposing the extreme penalty. This is italicized by the requirement of the statute, Section 924.32(2), Florida Statutes 1957, and F.S.A., that in those cases the court must examine the evidence and determine whether or not the interests of justice demand a new trial even if the sufficiency of the evidence is not challenged.
We deal with another point raised by counsel for appellant for the first time during oral argument and mentioned again by him in the reply brief which was filed afterward by leave of the court. The complaint is made that the trial court failed to charge the jury with reference to manslaughter despite the mandate of the statute, Section 919.14, Florida Statutes 1955, and F.S.A., and the pronouncement of this court in Killen v. State, Fla., 92 So.2d 825.
In that case it was contended that the court committed error in charging the jury on manslaughter in the trial of the appellant for committing murder in the first degree. It was held that no error had resulted from giving a charge that was necessary under the statute. Here it is insisted that we should reverse the judgment for failure to give the charge though there was no request for it, no objection for failure to give it and, to repeat, no mention of the failure until the oral argument was presented. Although such a charge would have been proper, Pait v. State, Fla., 112 So.2d 380, we do not feel that in the circumstances of this case and in view of the manner of Kaplan's death, we are obligated to hold, or even justified in holding, that the absence of the charge amounted to such fundamental error as to render the judgment erroneous.
We do not reverse the judgment on that ground but we observe, as we did in Pait v. State, supra, that it will be well when the case is re-tried for the judge to follow the statute, Section 919.14, supra, and the opinion in Killen v. State, supra.
Reversed for a new trial.
TERRELL, HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL JJ., concur.