466 So.2d 1051 (1985)
Charlie Lewis BURR, Appellant,
v.
STATE of Florida, Appellee.
No. 62365.
Supreme Court of Florida.
February 14, 1985.
Rehearing Denied April 26, 1985.
*1052 David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Andrew Thomas, Asst. Atty. Gen., Tallahassee, for appellee.
BOYD, Chief Justice.
This case is before us on appeal of a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Charlie Burr was indicted for the first-degree murder of a store clerk during a robbery at a convenience store near Tallahassee. At the trial the state's key witness was Domita Williams who testified that she was with appellant the morning of the murder. She testified that they drove to the store where she bought a cheeseburger and candy bar and that when she returned to the car appellant entered the store. She said that she heard a shot and then appellant came out. According to her testimony, they then drove to an apartment where appellant was staying and she told Katrina Jackson and Tammy Footman about the incident. Upon being called as a witness, Katrina Jackson at first denied Williams had told her anything, but after being declared a hostile witness and upon cross-examination by the state, she corroborated Williams' testimony. The state then presented evidence of collateral crimes. Three convenience store clerks from Brevard County testified that appellant robbed and shot them in three separate incidents within a period of nineteen days after the murder charged in the instant case.
The defense called Domita Williams as its main witness. She recanted her earlier testimony and claimed that she was not with appellant the morning of the murder.
In rebuttal the state proffered Tammy Footman's testimony; she had heard the previous day's testimony where Williams had inculpated appellant, but had not heard Williams' recantation. Over appellant's objections, Footman was allowed to testify concerning Williams' statements to her to the effect that she was present at the murder. An investigator was also allowed to testify about Williams' statements to him, which were consistent with her original testimony. An interview of Williams, recorded on audiotape, was played for the jury.
The jury found appellant guilty of first-degree murder and robbery with a firearm. At the sentencing hearing the state presented no additional evidence. The defense presented several witnesses who testified that appellant was a good man and had been raised a Christian. The jury recommended a sentence of life imprisonment.
Notwithstanding the jury's recommendation of a life sentence, the trial judge sentenced appellant to death. In support of his sentence, the judge found as aggravating circumstances that the murder was committed during the course of a robbery, that it was committed to avoid or prevent a lawful arrest, and that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The judge found nothing in mitigation.
Appellant's first argument on appeal is that he was denied due process of law because the selection of grand jury foremen in Leon County is racially discriminatory. Appellant moved to dismiss the indictment, claiming he made a prima facie case of racial discrimination by showing *1053 that very few blacks have served as grand jury foremen in Leon County. We rejected a similar argument in Andrews v. State, 443 So.2d 78 (Fla. 1983), and therefore hold that the court did not err in denying the motion to dismiss.
Appellant's next argument is that there is insufficient competent evidence to support affirmance of his conviction and that in the interest of justice he should be granted a new trial. See Fla.R.App.P. 9.140(f). Appellant concedes that there is legally sufficient evidence, in the form of Ms. Williams' testimony, to support his conviction, but that such evidence is not competent since Ms. Williams recanted her earlier incriminating testimony. He argues that a witness cannot be considered credible when giving one story and incredible when giving another. The logical conclusion of appellant's argument is that juries must believe all or none of a particular witness's testimony. The fallacy of this conclusion is self-evident. Obviously, a witness can tell the truth about some matters and lie about others. In this case, to reach a verdict of guilty, the jury had to believe Ms. Williams' original testimony and disbelieve her recantation. It is not this Court's function to reweigh the evidence, but only to ensure its legal sufficiency. Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The evidence was legally sufficient, and we do not find that the interests of justice require a new trial in this case.
Appellant also argues that the conviction should be reversed in the interest of justice because Ms. Williams originally testified under duress. The record shows that on the day of the trial Ms. Williams indicated for the first time that her testimony would not implicate appellant. The state attorney then conferred with her and advised her of the consequences of committing perjury and of the importance of telling the truth. After this conversation, Ms. Williams testified as originally expected. During her recantation she explained that she had changed her mind and agreed to testify against appellant because the state attorney was furious with her and had threatened to put her in jail. However, on cross-examination by the state, Ms. Williams testified that the state attorney had neither threatened her nor behaved in a hostile manner but had merely emphasized the importance of telling the truth. This admission and the fact that her testimony implicating appellant was consistent with her original statements to her friends and the police belie appellant's contention that Ms. Williams' testimony was the product of coercion or duress.
Appellant's next point on appeal is that the trial court erred by allowing into evidence the testimony of the other convenience store clerks to the effect that he had robbed them. Appellant contends that their testimony was not relevant to any issue of material fact. The state responds that such evidence was relevant to show identity, by showing the similarities between those shootings and this one, and to prove appellant had the intent to kill the victim. The state attempted to prove this latter element through the testimony of one of the other convenience store clerks who testified that appellant told him he was going to kill him.
We find that this evidence of collateral crimes was relevant to establish identity and intent and was therefore properly admitted. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); § 90.404(2)(a), Fla. Stat. (1981). Since this evidence did not become a major feature of appellant's trial, appellant was not improperly prejudiced by its admission. See Williams v. State, 117 So.2d 473 (Fla. 1960).
Appellant next argues that the court erred by failing to control the state's inflammatory and prejudicial argument. However, no objections were made with respect to the comments appellant now complains about, except for one of them. We therefore find that this point has not been properly preserved with respect to most of the comments appellant now claims *1054 were improper. See e.g. Steinhorst v. State, 412 So.2d 332 (Fla. 1982).
The one comment appellant did object to was the prosecutor's statements that there were people who were scared in this case and that appellant "executes" people. The trial judge ruled that such statements were a fair comment upon the evidence and denied appellant's motion for a mistrial. We do not find these statements to have been so unduly inflammatory or prejudicial as to warrant a mistrial. See Blair v. State, 406 So.2d 1103 (Fla. 1981).
Appellant's final argument with respect to the validity of his conviction is that the trial court erred in allowing a witness to testify in violation of the rule of sequestration. After Ms. Williams recanted and testified for the defense, the state called Tammy Footman as a rebuttal witness. Appellant objected on the grounds that Ms. Footman had been present during Ms. Williams' original testimony. The state proffered Ms. Footman's testimony, and the trial court ruled that only that part of her testimony that was consistent with her previous statement could be admitted. Because it was thus shown that Ms. Footman's testimony was not substantially different from what it would have been had she not heard Ms. Williams' testimony, the trial court did not abuse its discretion in allowing her to testify. Steinhorst v. State; Dumas v. State, 350 So.2d 464 (Fla. 1977).
With respect to his sentence, appellant claims that the trial judge erred in finding that the murder was committed for the purpose of avoiding a lawful arrest and in finding that it was committed in a cold, calculated and premeditated manner without pretense of any moral or legal justification. See § 921.141(5)(e), (i), Fla. Stat. (1981). In support of his findings, the trial judge found that the pattern of shooting store clerks during the commission of robberies exhibited an intent to eliminate witnesses. The judge also found that the position of the victim's body, indicating the victim was shot in the back of the head while kneeling down, supported the conclusion that the murder was committed in the manner of an execution. We find no error in these findings.
Finally, appellant claims that the trial judge erred in imposing the death sentence over the jury's recommendation of life. Appellant claims that reasonable people could differ as to the appropriate punishment because Ms. Williams' recantation created some doubt, albeit not a reasonable doubt, that appellant had indeed committed the murder. However, a "convicted defendant cannot be `a little bit guilty.' It is unreasonable for a jury to say in one breath that a defendant's guilt has been proved beyond a reasonable doubt and, in the next breath, to say someone else may have done it, so we recommend mercy." Buford v. State, 403 So.2d 943, 953 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). There were several aggravating circumstances and no mitigating circumstances, so death was to be presumed the appropriate penalty. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Moreover, there was no reasonable basis, discernible from the record, for the jury to recommend life. Therefore the judge was justified in overruling the jury's recommendation. See, e.g., Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
The aggravating circumstances adequately established and properly found by the sentencing court were:
(1) that the murder was committed in the course of a robbery;
(2) that the murder was committed for the purpose of avoiding arrest and prosecution;
(3) that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification.
*1055 There were no mitigating circumstances. A sentence of death in this case is consistent with capital sentencing approved by this Court in similar cases.
The judgment of conviction and the sentence of death are affirmed.
It is so ordered.
ALDERMAN, EHRLICH and SHAW, JJ., concur.
OVERTON and McDONALD, JJ., concur in the conviction, but dissent from the sentence.