838 So.2d 1122 (2002)
Konstantinos X. FOTOPOULOS, Appellant,
v.
STATE of Florida, Appellee.
Konstantinos X. Fotopoulos, Petitioner,
v.
Michael W. Moore, etc., Respondent.
Nos. SC00-1511, SC01-2824.
Supreme Court of Florida.
December 19, 2002.
Rehearing Denied February 14, 2003.
*1125 George E. Tragos, Clearwater, FL; and Kevin T. Beck, Capital Collateral Counsel, and Leslie Anne Scalley, Capital Collateral Counsel, Capital Collateral Regional CounselMiddle, Tampa, FL, for Appellant/Petitioner.
Richard E. Doran, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Konstantinos X. Fotopoulos appeals an order of Circuit Court Judge Kim C. Hammond denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const.

Facts and Procedural History
In 1989, Fotopoulos and Deidre Hunt, a woman with whom he was having an affair, went to an isolated rifle range with Kevin *1126 Ramsey. Ramsey was tied to a tree and, at the appellant's direction, was shot three times in the chest with a .22 rifle by Hunt. This portion of the shooting was videotaped by Fotopoulos. The taping of the events then stopped, and Fotopoulos shot Ramsey once in the head with an AK-47 assault rifle. Apparently, Ramsey was executed because he was attempting to blackmail Fotopoulos regarding alleged counterfeiting activities.
The videotape of the Ramsey killing was then used by Fotopoulos to force Hunt to arrange the murder of Fotopoulos's wife, Lisa. After failing to arrange the hiring of someone to kill Mrs. Fotopoulos three times, Hunt was finally successful in enlisting Bryan Chase to carry out the murder for $5000. On November 4, 1989, Chase entered the Fotopoulos home and shot Lisa once in the head. The shot was not fatal. After Lisa had been shot, Fotopoulos shot Chase repeatedly, killing him.
Fotopoulos and Hunt were eventually charged with two counts of first-degree murder, two counts of attempted first-degree murder, two counts of solicitation to commit first-degree murder, one count of conspiracy to commit first-degree murder, and one count of burglary of a dwelling while armed. Prior to testifying at Fotopoulos's trial, Hunt pled guilty to all charges and received two death sentences.
At trial, the State introduced evidence to demonstrate that Fotopoulos was the mastermind behind the events resulting in the deaths of both Ramsey and Chase and the near death of Lisa Fotopoulos. Significantly, the State constantly maintained in this proceeding that Hunt was dominated by Fotopoulos. The appellant/petitioner testified in his own defense and asserted his innocence throughout the trial. The jury found Fotopoulos guilty of all charges and recommended that he be sentenced to death for the murders. The trial court followed the jury's recommendation and sentenced Fotopoulos to death.
Fotopoulos asserted a total of sixteen claims in his direct appeal to this Court, all of which were rejected. See Fotopoulos v. State, 608 So.2d 784 (Fla.1992). On May 17, 1993, the United States Supreme Court denied Fotopoulos's petition for a writ of certiorari. Fotopoulos v. Florida, 508 U.S. 924, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993). Fotopoulos then filed and subsequently amended a timely motion to vacate the judgment against him and his sentence of death pursuant to Florida Rule of Criminal Procedure 3.850. On May 16, 1997, the trial court denied an evidentiary hearing on all claims presented in Fotopoulos's motion. On appeal to this Court, an order was entered denying relief on certain enumerated claims, but remanding the case for the presentation of a proper motion for relief to be submitted for consideration by the trial court. See Fotopoulos v. State, No. 91,227, 741 So.2d 1135 (Fla.1999).
Specifically, the Court held that Claims I, III, IV, V, IX, XII, and XV were not legally cognizable.[1]Id. Pursuant to this *1127 Court's order, a hearing was held March 6 through 8, 2000. On June 15, 2000, Judge Hammond denied all relief. See Fotopoulos v. State, No. 89-7632 (Fla. 7th Cir. Ct. order filed June 15, 2000). Fotopoulos appealed, asserting eight claims.[2] Subsequently, on December 21, 2001, Fotopoulos petitioned this Court for a writ of habeas corpus, asserting five additional claims.[3]

Rule 3.850 Postconviction Proceeding
In his first cognizable claim,[4] Fotopoulos asserts that trial counsel's performance was constitutionally deficient because he failed to obtain a transcript of testimony given by Fotopoulos at an indigency hearing that was subsequently used to impeach him at trial. As it is clear from the record that Fotopoulos's counsel did not have a transcript of the hearing at trial, he asserts that this is evidence of substandard investigation and preparation by Fotopoulos's attorney. In addition, Fotopoulos asserts that even after his trial counsel was given a copy of the hearing transcript at trial, he failed to request a necessary continuance to assess the import of the document.
Under the standard announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
[a] claim of ineffective assistance of counsel, to be considered meritorious, must include two general components.

*1128 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Importantly, a court considering a claim of ineffectiveness of counsel "need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied." Id.
In the instant case, it is clear that Fotopoulos cannot satisfy the Strickland prejudice element. At trial, Fotopoulos adamantly insisted that he be permitted to testify. As a result, the damaging evidence from his indigency hearing was certain to be used to impeach him during the State's cross-examination, regardless of his attorney's pretrial investigation, advice, or trial tactics. Therefore, even if the preparation and conduct of appellant's trial counsel were deficient, they were still irrelevant to the impeachment of Fotopoulos through the use of his prior testimony. This impeachment was unavoidable, even by a superb attorney.
Next, Fotopoulos argues that his attorney rendered constitutionally deficient assistance of counsel because he failed to properly prepare for trial through a full investigation for evidence that could have been used either to impeach the testimony of Deidre Hunt or refute the State's theory that Deidre Hunt was dominated by Fotopoulos throughout the time period surrounding the commission of the murders. The central theory advanced by the State at trial was that Deidre Hunt was dominated by Fotopoulos, and that he masterminded the entire chain of events which left Ramsey and Chase dead (and Lisa Fotopoulos severely wounded). Through posttrial investigation, Fotopoulos has identified information which, he asserts, should have been used at trial to rebut this theory. The evidentiary material cited by Fotopoulos falls into two major categories; we address each in turn.
Fotopoulos cites portions of the State's arguments, as well as evidence submitted at Deidre Hunt's sentencing hearing, to show that the picture of the crimes the State painted during that proceeding was different from the rendition it presented to Fotopoulos's jury. During Hunt's prosecution, the State did not contend that she was dominated by Fotopoulos; instead, it argued and introduced evidence indicating that she had participated in the murders voluntarily to gain a secure future with Fotopoulos.
When Fotopoulos's trial counsel was asked about the information revealed at Hunt's sentencing hearing and his decision not to use it at trial, this exchange occurred:
Q: When you were representing Mr. Fotopoulos at trial, was the State trying to prove that Mr. Fotopoulos controlled and dominated Deidre Hunt?
A: I think to a certain extent, yes.
Q: Was Deidre Hunt's sentencing phase conducted prior to Mr. Fotopoulos's trial?
A: Yes, it was.
Q: And did you attend that sentencing phase?
A: Yes, I did.
Q: Now, at that sentencing phase, was the State trying to prove that Dee Hunt was not dominated and controlled by Mr. Fotopoulos?

*1129 A. Yes. I think that they focused more on Deidre Hunt's own volitional acts, yes.
. . . .
Q: At that time, why did you not present witnesses that they had called at Deidre Hunt's penalty phase to show that Deidre Hunt was not being abused and assaulted and intimidated and coerced?
A: ... If you're asking for my reasoning as to why I didn't bring in any of that other evidence ... it wouldn't have been as effective as just clearly watching and listening to the videotape of Deidre Hunt telling her story.
Under the Strickland v. Washington test, proper review requires this Court to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." 466 U.S. at 689, 104 S.Ct. 2052. Additionally, we have stated that "[t]he standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995).
When considering Fotopoulos's ineffective assistance of counsel claims, the trial court concluded:
[T]he defendant's assertion that trial counsel was ineffective for not adequately investigating and utilizing evidence of Diedre Hunt's background and "domination" is also rejected. Carmen Corrente testified, without contradiction, that he did in fact attend Diedre Hunt's 1999 sentencing proceeding as part of his preparation for Mr. Fotopoulos' defense. In addition, he conducted a lengthy hours long deposition of Ms. Hunt prior to arriving at his trial strategy in dealing with Ms. Hunt through cross-examination. This Court finds that none of the evidence adduced at the evidentiary hearing in this cause could have led to a reasonable conclusion by the jury in this case that anyone other than Konstantinos Fotopoulos was the prime motivator, leader, and dominate [sic] member of this group of co-conspirators and bore prime responsibility for the deaths of Kevin Ramsey, Bryan Chase, and the attempted murder of Lisa Fotopoulos rested with the defendant [sic].
Any evaluation of the ages of the parties involved, there [sic] respective educations, as well as their positions within the community, as well as review of the evidence adduced as to Fotopoulos' ongoing criminal activities in counterfeiting, fascination with offensive weapons and his predilection for commando-like activities in hiding weapons and other paraphernalia around his home and in the woods, as well as his obvious motive in eliminating witnesses and affecting [sic] the death of the wife who was trying to divorce him and cut him off of his financial well-being, all point to the defendant, not Diedre Hunt, as the dominating influence in this reprehensible plan of multiple murders. Certainly, the physical evidence adduced in this case, the videotape with Fotopoulos' voice located at Fotopoulos's home, the discovery of the spent cartridge apparently from the AK-47 in Fotopoulos' vehicle and the testimony from all of the coconspirators at the original trial dovetailed to present a picture of Konstantinos Fotopoulos as the instigator and cause of the deaths in this case. None of the co-conspirators called to testify by Mr. Fotopoulos at the evidentiary hearing in any way recanted their prior substantive testimony that it was in fact Fotopoulos who suggested, planned, and implemented the killings at issue; to the contrary *1130 they reaffirmed that prior sworn testimony.
State v. Fotopoulos, Nos. 89-7632, 90-1995, 90-6668, order at 12-13 (Fla. 7th Cir. Ct. order filed June 15, 2000).
Analyzing the conduct of trial counsel under the parameters established in Strickland and Cherry, we conclude that Fotopoulos's trial counsel simply made a strategic decision when he decided not to use the information he received during his attendance at Hunt's sentencing hearing. As the issue is not "what present counsel or this Court might now view as the best strategy, but rather whether the strategy was within the broad range of discretion afforded to counsel actually responsible for the defense," Occhicone v. State, 768 So.2d 1037, 1049 (Fla.2000), this attack upon Fotopoulos's trial counsel's performance must fail because his performance has not been "shown to be outside the broad range of reasonably competent performance under prevailing professional standards." Maxwell, 490 So.2d at 932. We find no error in the trial court's decision on this claim.
In a similar fashion, Fotopoulos asserts an ineffective assistance of counsel claim regarding witnesses that could have been contacted and used at trial by his trial counsel, but were not. He argues that his counsel's lack of pretrial investigation constituted deficient performance, and the absence of these witnesses' testimony at trial prejudiced the defense. Each of the witnesses identified by Fotopoulos, and heard from during the evidentiary hearing below, could have been presented during the initial trial to impeach or rebut the testimony of Deidre Hunt regarding her domination by Fotopoulos.
Upon a review of the record, however, we conclude that the evidence proffered by Fotopoulos here is extremely tangential information that even the most diligent investigator would have not uncovered.[5] The probative and strategic value of any of this testimony at trial is extremely dubious. For this reason, we are confident in our conclusion that Fotopoulos's trial counsel did not render ineffective assistance by failing to locate these witnesses. This claim is without merit.
Fotopoulos next asserts that his trial counsel was ineffective because he did not attempt to preclude the admission into evidence of a particular .38 caliber pistol. However, Fotopoulos does not make a credible argument explaining why the pistol should have been suppressed, or what prejudice Fotopoulos suffered as a result of the pistol's "wrongful" admission into evidence. Fotopoulos admits in his brief that Deidre Hunt testified at Fotopoulos's trial that the pistol was an untraceable weapon that she planned to retrieve from its hiding place for use in the murder of Lisa Fotopoulos. Thus, there were certainly facts in evidence connecting the weapon to the Hunt-Fotopoulos conspiracy. As Fotopoulos elucidates no theory under which this pistol was wrongfully admitted into evidence, his trial counsel certainly did not render ineffective assistance by not attempting to keep it from the jury. See Engle v. Bugger, 576 So.2d 696 (Fla. 1991) (a court will not label counsel ineffective for failing to raise meritless claims); *1131 Card v. State, 497 So.2d 1169 (Fla.1986). We find this claim to be without merit.
Fotopoulos's next claim is that his trial counsel's performance during a hearing on the suppression of evidence seized from his home was substandard. As trial counsel presented no witnesses or any evidence of any kind at the hearing, it is asserted that his conduct fell below the Constitution's mandates regarding effective assistance of counsel. Based upon favorable rulings entered by the trial court, the State was able to enter severely damaging items into evidence, including the videotape of the Ramsey murder, an AK-47 assault rifle, a .22 caliber pistol, ammunition, and "other paraphernalia."
Fotopoulos's argument here is twofold. First, he asserts that an effective trial counsel would have located Angelo Katsouleas, a friend of Fotopoulos's, and had him testify that the brown bag seized from the family garage (inside of which the videotape was found) belonged to Fotopoulos. This testimony would have certainly assisted the defense in establishing the argument that Fotopoulos had a privacy interest in the contents of the bagan interest violated when the bag and its contents were seized by the police.
On its face, this argument creates the impression that trial counsel must have fallen below acceptable standards by failing to obtain Katsouleas's name from his client. It is what Fotopoulos has failed to include in his argument, however, that is key here. When Fotopoulos and his counsel originally discussed the brown bag, Fotopoulos told his attorney that the bag was not his. It is absolutely untenable to assert now that trial counsel rendered ineffective assistance of counsel by not searching for witnesses to testify regarding Fotopoulos's ownership of the bag, when Fotopoulos himself foreclosed such investigation. Just as counsel will not be considered ineffective for honoring his client's wishes,[6] he cannot be deemed ineffective for relying on his client's statements when he had no reason to doubt his client's veracity. Fotopoulos's trial attorney performed properly under the circumstances, despite initially laboring under a completely incorrect assumption. As Fotopoulos himself misled his trial counsel, he cannot be heard to complain now of the consequences which followed.
The second argument advanced by Fotopoulos here is that the consent given the authorities by Mary Paspalakis and Lisa Fotopoulos to search their home following the attempted murder did not properly cover the two bags belonging to Fotopoulos that were located within the house. Since defense counsel failed to properly argue this in the trial court, Fotopoulos contends that he rendered ineffective assistance. The foundation for this assertion is primarily Justice O'Connor's concurring opinion in United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). There, Justice O'Connor stated that "[a] homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home." 468 U.S. at 725, 104 S.Ct. 3296 (O'Connor, J., concurring); see also United States v. Basinski, 226 F.3d 829 (7th Cir.2000) (detailing the factors for deciding when third-party consent to search a closed container is valid). When applied to the instant case, however, the persuasive value of Justice O'Connor's words is significantly diminished. First, the brown bag was not closed when Detective Adamy looked inside it and spotted the videotape. Pursuant to the consent he had been given, the detective was looking through the garage *1132 area, where he spotted the videotape "in an open bag, like a satchel-type bag or something like that, which was unzipped." As the officer was in the home pursuant to the consent of two residents and observed the videotape in plain view, seizure was entirely proper. See Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Because Fotopoulos's suppression arguments regarding the brown bag have no merit, we find no fault with trial counsel's failure to present them. See Engle, 576 So.2d at 699-701; Card, 497 So.2d at 1177.
With respect to the black bag that Fotopoulos had stowed in the family barbeque pit, the success or failure of a suppression effort here revolves around an analysis of whether the consent to search granted by Mrs. Paspalakis and Lisa Fotopoulos extended to properly cover this bag. In the absence of evidence showing that the owner of a closed container has affirmatively forbidden the possessor from consenting to a search,[7] the law is clear that a person having joint control of a dwelling with an absent resident may validly consent to the search of all areas under mutual control. See United States v. Matlock, 415 U.S. 164, 170-71, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
In the hearing below, when Fotopoulos was asked about his living situation at the time of the search, the following exchange occurred:
Q: And you had an agreement with your mother-in-law that you would stay in the [her] house until your other house was built and you would move out?
A: Was built and finished, yes.
Clearly, from this anecdote, it appears that Fotopoulos and his wife were living in his mother-in-law's home. As residents of the home, both Mrs. Paspalakis and Mrs. Fotopoulos had the requisite authority to grant the police permission to search their home. See Rodriguez, 497 U.S. at 181, 110 S.Ct. 2793. In addition, Fotopoulos's description of the circumstances surrounding his storage of the black bag in the barbeque area makes it clear that he never forbade anyone to allow a search of it.[8] Thus, Paspalakis and Fotopoulos had actual authority to consent to a search of the property, and gave their consent to the police. Under the Supreme Court's present jurisprudence,[9] arguments in favor of suppression at trial would have failed; thus, counsel's failure to raise them is certainly not "outside the broad range of reasonably competent performance under prevailing professional standards." Maxwell, 490 So.2d at 932. We find Fotopoulos's arguments regarding his counsel's conduct at his suppression hearing without merit, and deny the requested relief based thereon.
In his final substantive claim,[10] Fotopoulos asserts that the vacation of *1133 Deidre Hunt's death sentences by this Court and the subsequent resentencing to two life sentences following retrial constitutes newly discovered evidence in his case. He argues that since the State was allowed to inform Fotopoulos's trial jury that Hunt, the follower, had been sentenced to death, it is only natural that the jury members felt required to recommend that the leader of the conspiracy, Fotopoulos, be given the death penalty as well.
In Jones v. State, 591 So.2d 911 (Fla.1991), this Court updated the standard for analyzing newly discovered evidence claims, stating:
[W]e hold that henceforth, in order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. The same standard would be applicable if the issue were whether a life or death sentence should have been imposed.
Id. at 915. Thus, for Fotopoulos's newly discovered evidence claim to warrant this Court's ordering a new penalty phase, he must establish that if the information regarding Hunt's resentencing was before a new jury, it would probably recommend that he be sentenced to life in prison.[11]
We have had occasion in the past to address the effect that a codefendant's resentencing has upon a previously sentenced defendant. Consistently, this Court has held that "the sentence of an accomplice may indeed affect the imposition of a death sentence upon a defendant." Foster v. Florida, 778 So.2d 906, 922 (Fla.2000); see also Keen v. State, 775 So.2d 263, 285-86 (Fla.2000); Gafford v. State, 387 So.2d 333, 337 (Fla.1980). Just as steadfastly in this situation, however, we have held that "[d]isparate treatment of a codefendant, however, is justified when the defendant is the more culpable participant in the crime." Larzelere v. State, 676 So.2d 394, 407 (Fla.1996); see also Foster, 778 So.2d at 922, Ray v. State, 755 So.2d 604, 611-12 (Fla.2000); Hayes v. State, 581 So.2d 121, 127 (Fla.1991).
Significantly, when faced with the evidence presented at the hearing in this cause, the trial court declared:
This Court also rejects the defendant's assertion that Deidre Hunt's 1998 re-sentencing to life imprisonment constitutes "newly discovered evidence" justifying a resentencing proceeding for the defendant. As previously noted the evidence originally presented in this cause, and uncontroverted by any evidence adduced by the defendant, demonstrates that Konstantinos Fotopoulos was the prime movant and dominant actor in the killings at issue. He carried the motive that caused the death of Mark Kevin Ramsey and Bryan Chase and the near death of his wife Lisa. Under the circumstances in this case the defendant presents no basis for this court to determine under a "proportionality" analysis that a resentencing is warranted. The defendant was the most culpable and the most deserving of the death penalty. The overwhelming evidence of guilt adduced against the defendant for the crimes at issue and the great weight of the numerous aggravating circumstances *1134 that exist against a minimum of mitigation does not warrant re-visiting Fotopoulos' death penalties.
Clearly, the trial court was of the opinion that the roles Hunt and Fotopoulos each played in the murders justified the imposition of differing sentences. As there certainly was competent evidence before the court below to support this conclusion, we will not "substitute [our] view of the facts for that of the trial judge." State v. Spaziano, 692 So.2d 174, 175 (Fla.1997). As a result, we deny relief based upon Fotopoulos's newly discovered evidence claim.

Habeas Corpus Petition
In his first two ineffective assistance of appellate counsel claims, Fotopoulos simply recharacterizes the claim that he raised in his postconviction motion appeal regarding the State's differing positions in the Hunt and Fotopoulos trial court proceedings. Fotopoulos contends that his appellate counsel was ineffective because he should have asserted that the different positions taken by the prosecution violated the principles of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and because he failed to assert that Fotopoulos's trial counsel was ineffective for not using the differing testimony at trial. Because the facts and argument underlying these two claims are identical to those identified and raised during Fotopoulos's 3.850 appeal, Fotopoulos's claims of ineffective assistance of appellate counsel are without merit. This Court has stated many times:
Although claims of ineffective assistance by appellate counsel are cognizable in habeas petitions, using a different argument to relitigate an issue in postconviction proceedings is not appropriate. Furthermore, an allegation of ineffective counsel will not be permitted to serve as a means of circumventing the rule that habeas corpus proceedings do not provide a second or substitute appeal.
Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991) (quotation marks and citations omitted); see also Thompson v. State, 759 So.2d 650, 657 n. 6 (Fla.2000) (holding that it is not proper to argue a variant to an issue already raised in a habeas petition); Mann v. Moore, 794 So.2d 595, 600-01 (Fla.2001) (same). Thus, these claims of ineffective assistance of appellate counsel are procedurally barred.
In his third ineffective assistance of counsel claim, Fotopoulos contends that his appellate counsel rendered constitutionally deficient assistance because he failed to argue that the trial court erred in admitting certain testimony by Deidre Hunt during the guilt phase of Fotopoulos's trial. Specifically, Fotopoulos asserts that the State improperly presented evidence of an episode in which Hunt was abused by Fotopoulos. When Fotopoulos discovered that Hunt was packing her belongings in preparation for leaving the house, he slapped her, placed a handgun to her ear, forced her to destroy and burn photographs of her former boyfriend, and coerced her into unpacking and remaining in the house. Finally, Fotopoulos bound Hunt's hands with a coat hanger, covered her mouth with his hand, and burned her right breast with a smoldering cigarette.
Midway through this testimony, the defense objected, but the trial court overruled the objection, stating:
To the point that you made in your opening statement that you contend that she's the principal cause behind these crimes, I feel testimony regarding their relationship and her state of mind would be relevant.
So, I think the relationship is one of the central issues in this case and will allow the question. *1135 Clearly, when faced with this claim, the trial court found the testimony relevant to the issue of domination and relative responsibility between Hunt and Fotopoulos for the murders committed in the instant case.
Fotopoulos asserts that this testimony relating Hunt's state of mind was improper under Williams v. State, 117 So.2d 473 (Fla.1960). In Williams, this Court condemned the situation in which the State is permitted to "go too far in introduction of testimony about [another] crime so that the inquiry transcended the bounds of relevancy to the charge being tried, and made the later offense a feature [of the trial] instead of an incident." Id. at 475. First, it must be noted that it is clear that the evidence identified by Fotopoulos was relevant to his guilt or innocence. A major facet of the trial was the relative culpabilities of Hunt and Fotopoulos, and the credibility of Hunt's assertions that she was dominated by Fotopoulos. Absent some prejudice to Fotopoulos, this evidence was admissible.
The contention that the testimony cited by Fotopoulos somehow "devolve[d] from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant," id., and became a feature of the trial is illogical. Fotopoulos has seized upon a microcosm of the voluminous trial record in this case and asserts that this four-page entry in the record somehow vitiated the fairness of the entire trial. The trial court did not abuse its discretion in admitting this evidence, and its admission certainly did not cause the trial to focus on ancillary character issues instead of the guilt or innocence of Fotopoulos.
Moreover, we conclude that, even if the trial court did err, this error was harmless since this portion of Hunt's testimony did not contribute to the jury's decision to convict the petitioner. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). Thus, appellate counsel did not render ineffective assistance for failing to raise a meritless claim. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). Finally, this Court does not fault appellate attorneys for raising "only the strongest points on appeal," because "the assertion of every conceivable argument has the effect of diluting the impact of the stronger points." Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989); see also Floyd v. State, 808 So.2d 175 (Fla.2002). Indeed, even the United States Supreme Court has held: "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every `colorable' claim ... would disserve the very goal of vigorous and effective advocacy...." Jones v. Barnes, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Therefore, the failure of Fotopoulos's appellate counsel to raise this dubious claim did not constitute ineffective assistance of counsel.
In a strikingly repetitive manner, Fotopoulos's next habeas claim is that the vacation of Deidre Hunt's death sentences by this Court and her subsequent resentencing to two life sentences following retrial constitutes newly discovered evidence in his case. Since Hunt and Fotopoulos were equally culpable defendants, Fotopoulos contends that his death sentence should be set aside to avoid an unconstitutional disparity in the sentences. This precise claim was raised during Fotopoulos's rule 3.850 appeal. Clearly, Fotopoulos's assertion of this claim in such a recurrent fashion is improper. As we stated in Parker v. Dugger, 550 So.2d 459 (Fla. 1989), "habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 *1136 motion." Id. at 460. Thus, this claim is without merit in this habeas corpus proceeding.
In the third claim contained in his habeas petition, Fotopoulos asserts that the Florida death sentencing statute is unconstitutional under the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[12] Fotopoulos has previously asserted the substance of this exact claim in the direct appeal of his conviction and sentence. See Fotopoulos v. State, 608 So.2d 784, 787 (Fla.1992). This Court recently addressed this precise contention in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002), concluding that Florida's system of imposing the death penalty is not constitutionally infirm. As the claim that the Florida capital sentencing scheme is unconstitutional has been decided adversely to Fotopoulos's contentions, his assertions are without merit.
Fotopoulos's final two claims may be addressed in a summary fashion. In his fourth claim, Fotopoulos asserts that cumulative error deprived him of his right to a fundamentally fair trial. Because we conclude that the trial court below did not err, this claim is meritless. See Melendez v. State, 718 So.2d 746, 749 (Fla.1998). Finally, because Fotopoulos's execution is not presently pending, his claim regarding his possible incompetency at the time of his execution is not properly reviewed at this time. See Hall v. Moore, 792 So.2d 447, 450 (Fla.2001) (holding that a habeas petitioner "cannot legally raise the issue of competency to be executed until after the death warrant is issued"); see also Fla. R.Crim. P. 3.811(c) ("No motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes."). Therefore, we decline to address this claim.

Conclusion
In accordance with the above analysis, we hold that the appellant has not presented any legal basis to set aside either his judgment or sentence of death. Therefore, the trial court's denial of Fotopoulos's motion to vacate the judgment against him and his sentence of death is affirmed. Additionally, Fotopoulos's habeas corpus petition is denied.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurring in result only with an opinion.
LEWIS, J., concurring in result only with an opinion, in which PARIENTE, J., concurs.
PARIENTE, J., concurring in result only.
I join in Justice Lewis's opinion concurring in result regarding the failure of trial counsel to introduce evidence of the State's differing positions regarding the culpability of Hunt and Fotopoulos at their separate trials, and I agree with Justice Lewis's observations expressing concerns about the State's inconsistent positions.
I also concur in the denial of relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. *1137 2428, 153 L.Ed.2d 556 (2002), for the same reasons as in my concurring-in-result-only opinions in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002). Although I believe that Ring compels us to recede from our statement in Mills v. Moore, 786 So.2d 532, 537-38 (Fla.2001), that death is the maximum penalty authorized for a first-degree murder verdict under Florida law, this conclusion does not render Fotopoulos's sentence infirm.
Two of the aggravating circumstances in this case were based on other convictions: a prior violent felony as to both murders and the commission of the second murder in the course of a burglary. See Fotopoulos v. State, 608 So.2d 784, 787 (Fla.1992). In Bottoson and King, we denied habeas relief to petitioners whose aggravating circumstances included prior violent felony convictions. Similarly, Fotopoulos is not entitled to relief under Ring and I concur in result only as to the denial of his petition for a writ of habeas corpus on this issue.
LEWIS, J., concurring in result only.
Although I am in agreement with a large part of the majority's opinion in this matter and concur in the result, I write to voice my disagreement with its conclusion regarding Fotopoulos's trial counsel's failure to introduce evidence of the State's conflicting conduct during Deidre Hunt's sentencing proceedings. After reviewing the record before this Court, I have grave concerns as to the State's conduct during the trials of the separate but related Hunt and Fotopoulos charges. Upon final analysis, I am compelled to conclude that appellant's counsel at trial failed to render effective assistance of counsel because of his inactivity in the face of compelling evidence that should have been used and presented during Fotopoulos's penalty proceeding. In my view, it is the prejudice element of Strickland that, although a close question and arguable, has not been established here.
As a threshold issue, it is beyond debate that a state attorney in Florida is a "quasi judicial officer of the court. It is [his or her] duty to see that a defendant gets a fair and impartial trial." Gluck v. State, 62 So.2d 71, 73 (Fla.1952). As an officer of the court, "he [or she] is charged with the duty of assisting the Court to see that justice is done," and it is not his or her duty "merely to secure convictions." Smith v. State, 95 So.2d 525, 527 (Fla. 1957); see also Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Thus, a state attorney is no mere litigant, but an important participant in our system of fairly enforcing our criminal laws.
Since the prosecuting attorney is an integral part of the system of justice and a representative of the State, it is repugnant to the tenets of due process and fundamental fairness that the State would purposefully present differing renditions of the same factual scenario during separate proceedings, simply to obtain a particular result against codefendants. This principle may prevent the State from taking differing positions at separate trials on the same facts; however, this limitation is necessary to ensure fundamental fairness to all those who stand accused of criminal activity. A review of the record here indicates that the State did present a version of the facts at issue here in direct conflict with the view presented in Hunt's proceedings, and Fotopoulos's trial counsel, although having full knowledge of such conduct, did not attempt to even explore the matter for the benefit of his client.
The record of Hunt's sentencing proceeding is replete with examples of the State both submitting evidence and advancing *1138 arguments that Hunt was an independent, bloodthirsty actor in the instant conspiracy, and that she was not in fact dominated by Fotopoulos in any fashion. The attorneys representing the State in Hunt's case made the following statements:
[T]he evidence will not establish, will clearly not establish was [sic] that Deidre Hunt was in any way acting under coercion or duress in the killing of Mark Kevin Ramsey.
. . . .
While Mark Ramsey had been sent away by Kosta to scout around the woods that Kosta Fotopoulos had opened up his trunk of his BMW and was standing at the back of the BMW's trunk, Kosta Fotopoulos advised Deidre Hunt that either she or Mark Ramsey was coming out of the woods and that she had a choice....
. . . .
[S]he was not acting under substantial domination, duress, or control of Kosta Fotopoulos.
. . . .
Deidre is doing it for money, for wealth, for power. So where is the substantial domination of Kosta [Fotopoulos]?
. . . .
There is domination here. There is the domination of the lure of money and power to Deidre Hunt, not the domination of Kosta Fotopoulos.
. . . .
You heard the State's two experts tell you that Deidre could have walked away any time she wanted to.
. . . .
Everything we have seen from Deidre Hunt is "I am running the show."
. . . .
We submit to you that there is no basis for finding that she was under the substantial domination of Kosta Fotopoulos as that is intended under the statutory mitigating factors.
. . . .
Kosta might have been the boss, but Deidre is the lieutenant.
. . . .
This is no act of someone suffering under the domination of another person, your Honor. This is a person that clearly took pleasure in what they did and went methodically about doing it.
Additionally, the State presented evidence during Hunt's trial attempting to demonstrate that Fotopoulos did not force and could not have forced Hunt to murder Kevin Ramsey by aiming a weapon at her while she shot Ramsey.
In 1989, this Court decided Parker v. State, 542 So.2d 356 (Fla.1989), wherein the defendant asserted that "the State violated Parker's due process and eighth amendment rights by taking different positions [in the trials of codefendants] concerning who fired the fatal shot." Id. at 357. Although we did not address the substance and merits of Parker's contentions, we clearly stated that "Parker was not precluded from presenting this matter to the jury." Id. at 358; see also Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (United States Supreme Court held that barring the introduction of a witness's prior testimony at a codefendant's trial which tended to refute the State's theory in a subsequent proceeding violated the Due Process Clause of the Fourteenth Amendment); United States v. Salerno, 937 F.2d 797, 812 (2nd Cir.1991) (holding that previous theories of prosecution are admissible in later proceedings as admissions of the prosecuting authority). Thus, in Florida, evidence that the State has previously presented differing *1139 versions of the facts at issue in a criminal prosecution is clearly admissible.[13]
When Fotopoulos's trial counsel testified in the proceedings below that in his view, evidence of the State's conflicting theories of the instant crimes was unnecessary because the videotape of the Ramsey murder showed clearly that Hunt was not dominated, the following question and answer exchange occurred:
Q: But you were trying to keep that stuff out entirely. Why not make the argument that the State is not being consistent here, trying to say that the reason they want it in is because she was dominated and controlled, when just a month prior, at Dee Hunt's penalty phase, they were arguing that she was not dominated and controlled and possibly being able to keep all of that evidence out?
A: I don't really recall the thought process on that. I can't answer it.
. . . .
So if you're asking for my reasoning as to why I didn't bring in any of that other evidence, it was questionable as far as admissibility, I believe, and it wouldn't have been as effective as just clearly watching and listening to the video tape of Deidre Hunt telling her story.
I suggest that Fotopoulos's trial counsel did not make strategic decisions here; it appears that the thought of submitting evidence of the State's varying, conflicting renditions of these murders never occurred to him, and if he researched the possibility of doing so, he either failed to find the controlling Parker authority or did not read the decision. Counsel apparently never even considered that the State was presenting both facts and arguments to convict Fotopoulos that were totally contrary to the facts and arguments that the same attorney representing the State had presented shortly before during the penalty phase of Hunt's trial. Even if counsel was relying on the videotape here to demonstrate Fotopoulos's lack of domination, nothing precluded, and competence required, that he also present the blatantly inconsistent evidence and arguments submitted by the State in these two proceedings.
The decision to simply ignore the available evidence cannot be considered simple strategy. In my view, trial counsel's response to this flaw is an excuse, not a valid strategic decision. I find it both inexcusable and "outside the broad range of reasonably competent performance under prevailing professional standards" that counsel did not introduce evidence from Hunt's hearing during Fotopoulos's trial.[14] A competent lawyer in a criminal case must properly research every reasonable avenue of defending a client, and compliance with this duty is certainly even more important in capital cases.
Additionally, I conclude that the trial court's analysis and resolution of the instant issue is both inadequate and improperly *1140 focuses upon the nature of Fotopoulos and Hunt's relationship. While the majority concludes that the trial court did not err, see majority op. at 1129, I respectfully disagree. The trial court did not adequately resolve Fotopoulos's claim that his attorney rendered ineffective assistance of counsel because he did not present evidence of the differing factual positions presented by the State. Indeed, the court's order does not even mention this issue; it simply dismissed the petitioner's contentions because "Fotopoulos was the prime motivator" and none of the conspirators recanted their trial testimony. Certainly, this weighty issue deserved discussion by the trial court, and I cannot agree with the majority's conclusion that the court did not err when the trial court's order does not even mention this claim, and, most assuredly, provides no analysis.
The prejudice resulting from Fotopoulos's counsel's failure to act here, however, is not as clear under the Strickland requirements and standards. The jury certainly could have been swayed by evidence showing that the attorney representing the State in this proceeding had painted an entirely different picture of the events in another criminal prosecution. When one involved in litigation has the ability to clearly demonstrate that the opposing party is attempting to mislead the jury, such is powerful and persuasive material for consideration. I suggest that jurors respond unfavorably and generally reject the positions and arguments submitted by a party, including the State, shown to have been less than candid by evidence such as that available to Fotopoulos's trial counsel here. Therefore, the absence of this extraordinarily persuasive evidence from Fotopoulos's penalty phase certainly causes concern for the propriety of the proceedings. See Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). However, the Strickland standard provides relief only when it is reasonably probable that a different result would have been obtained without counsel's failure and the deficiency "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986).
Based upon my conclusion that Fotopoulos has shown a failure in the performance of his trial counsel, but the totality of the circumstances do not satisfy the prejudice element, I would affirm on this basis only. As to the majority's view that Fotopoulos' counsel did not render ineffective assistance during the penalty phase, I respectfully dissent. I therefore concur in only the result here.
PARIENTE, J., concurs.
NOTES
[1] Claim I alleged that newly discovered evidence established Fotopoulos's innocence in the Ramsey murder. Claim IV asserted that ineffective assistance of counsel or the prosecutor's improper conduct in exercising peremptory challenges rendered Fotopoulos's convictions and death sentences fundamentally unfair. Claim V alleged that ineffective assistance of counsel or prosecutorial misconduct in cross-examining Hunt rendered Fotopoulos's convictions and death sentences fundamentally unfair. Claim IX asserted that Fotopoulos's trial counsel provided ineffective assistance by failing to conduct proper pretrial investigation and permitting impeachment of Fotopoulos on the basis of prior testimony. Claim XII argued that Fotopoulos's trial counsel's assistance was ineffective for failing to prepare Fotopoulos for cross-examination and failing to object to the prosecutor's improper conduct and improper closing argument. Claim XV alleged ineffective assistance of trial counsel for failing to object to the state's knowing introduction of false testimony. Claim III alleged that the grossly improper conduct of Fotopoulos's first trial counsel amounted to ineffective assistance of counsel.
[2] Fotopoulos asserts that (1) the trial court erred in finding that certain of his claims were procedurally barred, (2) his trial counsel failed to provide effective assistance of counsel by not requesting a continuance when faced with certain impeachment evidence, (3) his trial counsel failed to provide effective assistance of counsel by not fully investigating and gathering information that could have been used to impeach Deidre Hunt and rebut a central theory of the State's case, (4) his trial counsel failed to provide effective assistance of counsel by not seeking to stop the admission into evidence of a particular .38 caliber pistol, (5) his trial counsel failed to provide effective assistance of counsel during a suppression hearing, (6) his trial counsel failed to provide effective assistance of counsel by not objecting to the State's characterization of the relevant facts with reference to black jurors, (7) that when cumulated, the errors of his trial counsel denied Fotopoulos his rights to a fair trial and due process, and (8) that the resentencing of Deidre Hunt constitutes newly discovered evidence justifying a new trial or sentencing hearing.
[3] In his habeas corpus petition, Fotopoulos contends that (1) his appellate counsel rendered constitutionally deficient assistance, (2) the resentencing of Deidre Hunt results in an unconstitutional disparity in sentences between coconspirators, (3) the Florida capital sentencing statute and procedures are unconstitutional, (4) cumulative error deprived him of a fundamentally fair trial, and (5) his execution will violate the Eighth Amendment to the United States Constitution because he may be incompetent at the time his sentence is carried out.
[4] In his first claim, that the trial court erred in finding that certain of his claims were procedurally barred, Fotopoulos presents absolutely no substantive issue for this Court to address. Therefore, we find that this claim is insufficiently presented for review and without merit. See Shere v. State, 742 So.2d 215, 217 n. 6 (Fla.1999). Additionally, Fotopoulos asserts that his trial counsel's assistance was constitutionally deficient because he failed to object to the State's characterization of two black jurors' responses during voir dire. As we addressed and rejected this claim on Fotopoulos's direct appeal, see Fotopoulos v. State, 608 So.2d 784, 787-88 (Fla.1992), raising it again here as an ineffective assistance of counsel claim is improper. See Medina v. State, 573 So.2d 293, 295 (Fla.1990).
[5] Two of the witnesses that Fotopoulos asserts his counsel should have located possessed information regarding allegedly illegal conduct perpetrated by Hunt when she was in her mid-teens, in New Hampshire. Another of the witnesses testified about her general impressions of Deidre Hunt's personality, as well as a time when she witnessed Hunt "waving around" a gun while riding a bicycle with Fotopoulos. Finally, Fotopoulos elicited the testimony of a witness regarding his brief romantic involvement with Hunt, primarily to refute Hunt's trial testimony that she had been abused and taken advantage of by him.
[6] See Sims v. State, 602 So.2d 1253, 1257-58 (Fla.1992).
[7] See, e.g., Basinski, 226 F.3d at 835.
[8] The appellant admitted that his wife noticed him putting the bag in the barbeque pit and described the resulting discussion:

She just happened to be looking out and said, What are you doing there? And I wasI said, Well, I'm just putting something away. And she didn't know exactly what it was. She did not know whether it was in the barbeque pit or somewhere behind it or in the area around because she was about 40, 50 feet away.
[9] See Rodriguez; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
[10] Fotopoulos asserts that when the effects of the many asserted errors identified in his brief are cumulated, he has been denied his fundamental rights to a fair trial and due process. However, as we conclude that all of Fotopoulos's claims are either meritless or procedurally barred, there is no cumulative effect to consider. See Melendez v. State, 718 So.2d 746, 749 (Fla.1998).
[11] Deidre Hunt's resentencing qualifies as newly discovered evidence because it occurred after Fotopoulos's trial and sentencing. See Jones, 591 So.2d at 916 (newly discovered evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence").
[12] In a filing of supplemental authority, Fotopoulos also contends that Florida's death penalty scheme is unconstitutional under the United States Supreme Court's Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), decision.
[13] Although not analyzed in Parker v. State, under the Florida Evidence Code, the transcript of Hunt's sentencing proceeding could have possibly been admitted into evidence as the recorded recollection of the transcriptionist, records of a regularly conducted business activity, or as a public record. See §§ 90.803(5)-(6), (8), Fla. Stat. (2001).
[14] While the Eleventh Circuit Court of Appeals held in Parker v. Singletary, 974 F.2d 1562 (11th Cir.1992), that trial counsel did not render ineffective assistance where he failed to discover the State's differing theories of prosecution, see Parker, 974 F.2d at 1578-79, the scenario before this Court in the instant case is entirely different. Here, there is no question that Fotopoulos's counsel had evidence of the State's differing theories of prosecution in his possession-it is the failure to use this information at trial, however, that I deem ineffective assistance of counsel.